**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RUBEN QUINTERO,<br><br>                    Petitioner,<br><br>          vs.<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent.<br>———————————————————— | No. CV-F-04-5791 OWW<br>(No. CR-F-02-5379 OWW)<br><br>MEMORANDUM DECISION AND ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT FOR RESPONDENT |

On June 20, 2004, Petitioner Ruben Quintero timely filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.

Petitioner was charged by Superseding Indictment with use of a communication facility in connection with a drug offense in violation of 21 U.S.C. § 843(b).  Petitioner pleaded guilty pursuant to a written Plea Agreement.  The Plea Agreement specifically stated:

> The defendant has read the charges against

1

him contained in the Indictment and the
Superseding Information in this case, and the
charges have been fully explained to him by
his attorney.  Further, the defendant fully
understands the nature and elements of the
crimes with which he has been charged,
together with the possible defenses thereto,
and has discussed them with his attorney.

...

3.  Agreements by the Defendant.

...

(g)  Defendant, Ruben Quintero, hereby
acknowledges the benefits he has received
pursuant to the plea disposition set forth in
this memorandum and his guilt of the offenses
[sic] to which he is pleading guilty.
Defendant hereby waives all rights to contest
the means by which his plea of guilty will be
entered before the District Court.  This
waiver includes, but is not limited to, any
claim, whether in District Court or in
appellate proceedings and on direct appeal or
subsequently, that the dictates of Federal
Rule of Criminal Procedure 11, or any
successor Rules, legislation or case
authority, were not followed in the entry of
defendant Quintero's guilty plea.  The
defendant is also aware that Title 18, United
States Code, Section 3742 affords a defendant
the right to appeal the sentence imposed.
Acknowledging all this, the defendant
knowingly waives the right to appeal, on any
ground whatsoever, any sentence so long as
the initial term of imprisonment is four (4)
years or less.  The defendant also waives his
right to challenge his conviction, sentence
or the manner in which his sentence was
determined in any collateral attack,
including but not limited to a motion brought
under Title 28, United States Code, Sections
2255 or 2241.

...

4.  Joint Agreements By The Parties.

(a)  The defendant and the government agree

2

and stipulate that the amount of controlled substances involved in the defendant's offense is approximately 3024 grams of a mixture or substance containing cocaine base/crack.  The mixture or substance containing cocaine base/crack was 53% pure resulting in 1602 grams of pure cocaine base/crack.

...

6.  <u>Factual Basis</u>.

The defendant will plead guilty because he is in fact guilty of the crime set forth in the Superseding Information.  The defendant also agrees that his guilty plea will be based upon the following facts, although he acknowledges that, as to other facts, the parties may disagree:

Between approximately September 18, 2002 and September 30, 2002, in Fresno County, State and Eastern District of California, defendant Ruben Quintero was a member of a conspiracy to distribute, and possess with intent to distribute, cocaine base/crack.  On or about September 30, 2002, defendant Ruben Quintero Roman [sic] engaged in several telephone conversations with his brother Manuel Quintero. Those telephone conversations concerned arrangements for Ruben Quintero and Dalia Roman (Manuel Quintero's girlfriend) to watch out for law enforcement while Manuel Quintero sold cocaine base/crack to someone.  On September 30, 2002, Dalia Roman and Ruben Quintero traveled to the apartment complex at 3207 West Shields Avenue, Fresno California in order to watch out for law enforcement while Manuel Quintero negotiated the sale of cocaine base/crack.  At all relevant times, defendant Ruben Quintero and his co-conspirators knew that cocaine base/crack is a controlled substance.

3

Petitioner was sentenced to 48 months incarceration and a 12 month term of supervised release.  Petitioner did not file an appeal.

Petitioner raises a number of grounds for relief:

> I.  Whether counsel was ineffective upon lack of objection to the District Court <u>Non-Discretionary</u> Nature of Imposition of Supervise [sic] Release under Apprendi v. New Jersey?;

> II.  Whether counsel was ineffective upon allowing a plead guilty [sic] without information of the 'voluntary; freely and intelligent elements' where the <u>absence</u> of assurances of the first 'core concerns of be free of coercion and promises are lacking?;

> III.  Whether counsel was ineffective at sentencing hearing upon lack arguments regarding: (a) entranpment [sic] and manipulation sentence, (b) his client foreseeability of '2 kilos of cocaine', (c) his client was less culpable and entitled to four level downward departure upon minimal role, (d) did no [sic] call for sentencing hearing the codefendants' [sic] Manuel and Dalia to support the minimal role and does not contact nor call the movant families (mother and sister) to entice the minimal role under the facts of the case?;

> IV.  Whether miscarriage of justice is an exception to the enforcement of waivers?;

> V.  Whether counsel was ineffective upon lack of information to his client regarding the 'law' as applied to the facts of the present case which did tainted [sic] the plead guilty as unknowingly, unvoluntary [sic] and unintelligently taken?;

> VI.  Whether counsel was ineffective upon movant plead guilty was the product of (a) coercion, (b) 'unlawfull out-of-court package deal bargain based in [sic] his codefendant's Manuel Quintero cooperation/agreement, (c) out-of-court counsels and drug enforcement

4

agents 'secretive' package deal agreement?;

VII.  Whether the District Court committed plain error and abuse it [sic] judicial function in accepting as factual basis of guilty plea 'mere association and communication with the perpetrator of the criminal activity?;

VIII.  Whether counsel failure to minimum affording an Alford plea and/or calling for pretrial hearing before the recommendation of guilty plea was entered?

In support of his motion, Petitioner submits the following declaration:

2. - I was never aware of any conversations regarding drug deals from Manuel Quintero and an [sic] confidential informant.  I was never present when both discussed a three kilogram cocaine purchase and I was not in any countersurveillance, since I was not present at such meetings.

3. - During the arrest day on September 20, 2002, I was asked from Dalia's my sister in law to pursue a ride to the Manuel apartment. I was visiting my mom like every-day after work.  When I arrived to the apartment with Dalia's, Manuel came to the car and instructed me to leave the area and I did so, I was think that because Manuel was to his apartment some trouble was present between him and Dalia in their relationship.

4. - I plead guilty to the offense based on my lawyer recommendation that because I had answered a phone call in the arrest day I was guilty of conspiracy, I had no prior conversations nor had understand the law nor the facts of the case, counsel at no moment had explained me anything regarding the case. It was my understanding from the beginning that I would be release based in agreement between the counsels and the government for Manuel cooperation, later counsel informing that only boot camp would be permitted due to no enoughly Manuel cooperation and when sentence was schedule counsel had informed

5

that I would be sentence to camp or probatory
and after sentence had said that I was
allowed to have one year reduction mandatory.

5. - During all times, trial counsel had
informed that the case was enterily depending
of what Manuel was to do to handle his own
case, because Manuel guilty was also me
guilt.  Nonbody informed me that I would not
be culpable for association or family
relationship alone.

6. - Counsel treathening and coerce me to
plead guilty because according to counsel the
government was so powerfull that no way to
win the case was possible.  I had no prior
convictions nor association with anything
regarding dope-deal, the attorney had
informed that the government was discussing
with him that I was involved on dope-deal in
the past years, I had very clear informed to
the counsel that it was untrue and that at no
moment I was involved in anything regarding
dope.

Based upon the foregoing motion of & 2255, I
believe that there is presented an
ineffective assistance counsel, had I
knowingly that the law was regarding the
present case I would with fiar and just
reason asserted my trial right at any cost.
[SIC]

Petitioner also submits a declaration by Manuel Quintero:

2.    This declaration/affidavit is made to
support a Motion under & 2255 of Ruben
Quintero who also was charged with possession
and intent to distribute cocaine base/crack
and conspiracy to distribute cocaine
base/crack, in violation of 21 U.S.C. & 841,
I learned through my personal participation
in the outcome of the case that Ruben's was
later charged with superseding information
under communication to permit the narcotic
transaction under 21 U.S.C. & 843(b) and by
consultation with my trial attorney.

3.   I had no negotiated the transaction
described from Agent's Campbel affidavit on
or About August 25, 1999 wherein appear I had

6

sold to detective Epifanio Cardenas one ounce
of cocaine while him was working in an
undercover capacity.  Such affirmation was a
perjuris and had only looking the objective
of 'bolstering' the case to allowed the
communication with the confidential informant
Michael's.  I had know the confidential
informant as Michael or simply Mike, but at
no moment with or without Michael had I sold
any cocaine to any undercover agent's as
appear in the D.E.A. Special agent affidavit.
I had not knowledge of such factor, nor had
my lawyer discussed with mine in fully the
truth of such transaction, would I be allowed
a face to face discussion with the named
Epifanio Cardenas him would no point such
factor as different to perjury and if allowed
or believed from the prosecution it would be
against the laws of the nature to think I had
been do so.  I personally when had been sold
any dope had a personal knowledge of any
customer.

4.  I had discussed on September 19, 2002
with Michael (C.I.) the selling of three
powder kilograms of cocaine.  Before this
meeting years before when I had selling any
dope to Mike, it was powder and Mike in my
presence had been cooking into crack you own
dope based in the factor that I was never
interested in selling or be involved in the
crack cocaine transactions/business.  I had
personal knowledge that Mike had always
transformed any powder cocaine into crack in
order to selling to Mike distributors.

5.  After I came to prison, I learned that
Mike had been arrested for crack cocaine
transactions and today I understand that it
was the main factor which let him intent
involvement with mine in the
crack/enterprises.  I had not knowledge nor
was discovered from my lawyer's that Mike was
incorporating with law enforcement agencies
in order to hope a favorable treatment with
regard to his own drug trafficking offense.

6.  I am responsible for what happen on
September 30, 2002, when I was arrested and
charged in the offense I did made an
agreement which is fair called out-of-court

7

agreement with my lawyer, my lawyer promised me that if I plead guilty and cooperated with the government my brother and codefendant's Manuel would be release of the offense, I had explained to both my lawyer and the government agents that my brother had nothing to do with the transaction or offense and that my brother had no the <u>minimum</u> knowledge of what I was and had been done on the arrest day.

7.   When I plead guilty to the offense, my lawyer told me, that pressure in my brother was necessary in order to I obtain lenient sentence and that if my cooperation was not enough, my brother should be sentenced to both camp or probation.  There was an out of court agreement between my lawyer, the government and myself to plead guilty and enticing my brother to do the same in exchange of lenient sentence based on my cooperation and release or boot camp to my probation or alternatively probation sentence.

8.   I had not called to Ruben, my intention was always call to my law common wife's Dalia, but she had asked Ruben to be brought through a ride in the Ruben's car, since she had no car available.

9.   I had no knowledge that the law of the United States doesn't permitted guilty for association or guilty for familirelationship, it was no explained to myself from trial counsel.

10.   Had Ruben asserted jury trial I was abel to offer the same testimony included in the present declaration, which is based in the truth, I had no knowledge that the government intention was to sentencing Ruben to incarceration time, since both my lawyer and the own government during metings had enoughly explained that as product of my cooperation Ruben and Dalia would be release of the offense.  I did offer my cooperation and still am able to cooperate but also I must states before this court that Ruben had nothing to do with my offense and if I would understant that my lawyer and government had

misleading the factor tha Ruben would be
incarcerated, I would at no moment pressure
Ruben to plead guilty.

Petitioner also submits the declaration of his sister, Alma L.

Quintero:

Ruben had the habit of coming to my mother's
house in the afternoons after work.  On the
day of his arrest, it was no different.  He
came home to 2469 South Laureen.  On the same
day, my sister in law, Dalia Roman was also
at my mother's housse.  Since she had no car
to drive herself home, she asked my brother,
Ruben, to give her a ride to her apartment
located on Shields Avenue and Valentine
Avenue.  Being Ruben's sister I know him well
and can attest on his behalf that he was not
involved in any type of illegal activity nor
is he a delinquent.  We have a good
relationship and trust each other.
Therefore, if there were anything wrong then
he would have told me.  During the trial and
court proceedings I was not call [sic] upon
to present my testimony nor was I given the
opportunity to speak with his counsel.  I
firmly believe the justice system can give my
son [sic] Ruben Quintero equity, as he did
not recive a fair trial.

Petitioner also submits the declaration of his mother, Maria

Quintero, which is in all respects identical to that of Alma

Quintero.

    A.    Effect of Waiver in Plea Agreement.

    A defendant may waive the statutory right to bring a Section

2255 motion challenging the conviction or sentence.  *United*

*States v. Pruitt*, 32 F.3d 431, 433 (9th Cir.1994); *United States*

*v. Abarca*, 985 F.2d 1012, 1014 (9th Cir.1992), *cert. denied*, 508

U.S. 979 (1993).  The Ninth Circuit ruled that "a plea agreement

that waives the right to file a federal habeas petition pursuant

to 28 U.S.C. § 2254 is unenforceable with respect to an IAC claim that challenges the voluntariness of the waiver." *Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir.2005), *cert. denied*, 547 U.S. 1074 (2006).  Petitioner makes no claim in his Section 2255 motion that he was denied the effective assistance of counsel or that the waiver of his right to collaterally attack his conviction and sentence was not knowing and voluntary because of ineffective assistance of counsel.  Consequently, Petitioner cannot challenge his conviction or sentence pursuant to Section 2255.

  B. <u>Ineffective Assistance of Counsel</u>.

  The Court assumes, arguendo, that Petitioner's waiver does not preclude his claims of ineffective assistance of counsel.

   1. <u>Governing Standards</u>.

  To establish an ineffective assistance of counsel claim, Petitioner must show: (1) the representation was deficient, falling "below an objective standard of reasonableness"; and (2) the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The Court need not evaluate both prongs of the *Strickland* test if the petitioner fails to establish one or the other.  *Strickland*, *id.* at 697; *Thomas v. Borg*, 159 F.3d 1147, 1152 (9th Cir.1998), *cert. denied*, 526 U.S. 1055 (1999).

  Under the first prong, Petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

*Strickland*, 466 U.S. at 687.  "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Id.* at 690.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct of counsel's performance at the time."  *Id.* at 689.  The proper inquiry is whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*  The court must apply "a heavy measure of deference to counsel's judgments," and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance."  *Id.* at 690-691.  "The relevant inquiry under *Strickland* is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable."  *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir.1988).  "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel."  *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir.1989).  A decision to waive an issue where there is little or no likelihood of success and concentrate on other issues is indicative of competence, not ineffectiveness.  *See Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir.1989).

To meet the prejudice requirement, the petitioner must

11

demonstrate that errors "actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693.  "It is [also] not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.*  "Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.*  "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.* at 694.  Where a petitioner enters a guilty plea upon the advice of counsel, the voluntariness of the plea depends upon whether the petitioner received effective assistance of counsel.  In order to prevail on an ineffective assistance of counsel claim, "the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985).

    2.   <u>Failure of Counsel to Advise Petitioner of What the "Element Voluntary" or the "Element Freely and Intelligently" Meant Before Entry of Guilty Plea</u>.

    Petitioner claims that he was denied the effective assistance of counsel because of counsel's failure to advise Petitioner that his guilty plea must be voluntary, knowing and intelligent.  Petitioner asserts that he was "coerced and forced

from his counsel to enter the plead of guilty, nothing in the agreement indicates the appellant's guilty or signature would not be the result of 'force or coercion or assurance or promises. [sic].'" Petitioner asserts that his "main motive to plea of guilty was the product of his lawyer coercion and promises that petitioner's would be sentenced to probation and faces not jail incarceration."

Petitioner's claims are belied by the terms of the Plea Agreement and the Rule 11 colloquy conducted during the change of plea proceedings.  The Plea Agreement specifically stated:

> 2.  <u>Nature, Elements and Possible Defenses</u>.
>
> The defendant has read the charges against him contained in the Indictment and the Superseding Information in this case, and the charges have been fully explained to him by his attorney.  Further, the defendant fully understands the nature and elements of the crimes with which he has been charged, together with the possible defenses thereto, and has discussed them with his attorney.
>
> ...
>
> 10.  <u>Entire Agreement</u>.
>
> The defendant and his attorney acknowledge that no threats, promises or representations have been made, nor agreement reached, other than those set forth in this agreement and the memorandum to induce defendant to plead guilty.

During the Rule 11 colloquy, Petitioner stated under oath that he had completed a high school education, that he had never been treated for a mental illness or for addiction to narcotic drugs, and that he had not consumed any medicine, drug or alcohol on the

13

day of sentencing.   Petitioner stated under oath that he had read the Plea Agreement, that he had discussed it with Mr. Harralson and asked Mr. Harralson questions about the Plea Agreement before signing it, and that he understood the Plea Agreement before signing it.   Petitioner stated under oath he had been able to discuss the charge in the Superseding Information and how it would be defended at trial with Mr. Harralson and that Petitioner was completely satisfied with the legal advise, counsel and representation Mr. Harralson had provided.   During the change of plea proceedings, the Court orally reviewed in open court every provision of the Plea Agreement with Petitioner and asked Petitioner if he agreed.   In every instance, Petitioner stated that he did.   After reviewing with Petitioner every provision of the Plea Agreement pertaining to agreements by Petitioner and agreements by Respondent, the following occurred:

> Q.  I have gone through what I understand in this writing to be the entire agreement as to what you are supposed to give and get in return.  Do you have any different understanding?  Has anybody promised you anything that I have not just gone over?
>
> A. No.
>
> Q.  Has anybody threatened you or put pressure on you to get you to change your plea?
>
> A.  No.

The Court then reviewed with Petitioner the maximum punishment for the crime, including that the maximum term of supervised release was one year.   Petitioner stated that he understood the

maximum sentence that could be imposed.  The Court reviewed with Petitioner the elements of the offense that must be proved before Petitioner could be convicted.  Petitioner stated that he understood the elements.  The Court then reviewed with Petitioner the factual basis for the guilty plea set forth in the Plea Agreement and asked Petitioner if those facts were true, to which Petitioner responded "yes."  After reviewing with Petitioner each of the constitutional and statutory rights Petitioner was giving up by not having a jury trial, asking Petitioner if he understood each of those rights and was willing to give them up, to each of which Petitioner responded affirmatively, the Court asked Petitioner how he pleaded to the Superseding Information.  After Petitioner pleaded guilty, the Court found:

> It is the finding of the Court in the case United States versus Ruben Quintero that the defendant is fully capable of entering an informed plea.  His plea of guilty is knowing and voluntary.  It is supported by independent facts that establish eash essential element of the offense.

Petitioner's contention that defense counsel was ineffective because he did not explain to Petitioner that his guilty plea must be voluntary, knowing and intelligent before the Court would accept it is irrelevant given the detailed and specific Rule 11 colloquy described above.  The Court determined based on Petitioner's responses under oath that Petitioner voluntarily, knowingly and intelligently entered into the Plea Agreement.

Petitioner's motion on this ground is DENIED.

**3.   Ineffective Assistance of Counsel Regarding Law and Facts of Case**.

Petitioner contends that he was denied the effective assistance of counsel because counsel failed to explain to Petitioner prior to the entry of the guilty plea the following:

> 1).  Petitioner was not informed at all of the sentence entranpment;
>
> 2).  Petitioner's was not informed at all from his counsel of the sentencing manipulation as trial defense;
>
> 3).  Petitioner's was no informed that he wasn't entitled to be found guilty based in 'family relationship as evidences substantive of guilty';
>
> 4).  Petitioner's was not informed that he was not entitled to be found guilty whether the government had used 'evidence of association' as substantive of guilty. [SIC]

Petitioner's claims of ineffective assistance of counsel are belied by the Rule 11 colloquy discussed above.  Petitioner admitted under oath that he had discussed the charge against him and how it would be defended with defense counsel prior to signing the Plea Agreement and that he understood the Plea Agreement.  Petitioner admitted under oath that he had read that aspect of the Plea Agreement setting forth the elements that must be proved by the United States beyond a reasonable doubt.  During the Rule 11 colloquy the Court read those elements to Petitioner and Petitioner stated that he understood those elements, including the element that Petitioner became a member of the conspiracy knowing at least one of its purposes and intending to

16

help accomplish it.  The sentence was based on a superseding information under which Petitioner pleaded to a phone count carrying a maximum sentence of 48 months.

Petitioner's contention that counsel was ineffective for failing to advise Petitioner that "sentencing entrapment" or "sentencing manipulation" are trial defenses is without merit. "Sentencing entrapment or 'sentence factor manipulation' occurs when 'a defendant, although predisposed to commit a minor or lesser offense, is entrapped into committing a greater offense subject to greater punishment.'" *United States v. Staufer*, 38 F.3d 1103, 1106 (9th Cir.1994).  "'[S]entencing entrapment may be legally relied upon to depart under the Sentencing Guidelines ....'" *Id.* at 1108.  Consequently, counsel was not ineffective by failing to advise Petitioner that sentencing entrapment is a defense to the crime of conviction.[1]

Petitioner contends that counsel was ineffective because he failed to conduct pretrial investigation of the confidential informant to discover his criminal history or to move for severance of his trial from that of his co-defendants to avoid any spill-over effect.

Petitioner's claim of ineffective assistance because of the failure to move for severance fails on the prejudice prong.  A motion for severance is rarely granted in a conspiracy case

---

[1]Further, Petitioner makes no showing from which it may be inferred that he would not have pleaded guilty and gone to trial based on the alleged sentencing entrapment or that he was even subjected to sentencing entrapment.  The opposite is true.

17

1  because any possibility of prejudice resulting from the spill-

2  over effect of evidence is negated by the use of limiting

3  instructions.

4       Petitioner's claim of ineffective assistance because of

5  counsel's failure to seek discovery of the criminal history of

6  the confidential informant is without merit.  Rule 16(a)(2),

7  Federal Rules of Criminal Procedure, states that, except as

8  provided in Rule 16(a)(1)

9            this rule does not authorize the discovery or
             inspection of reports, memoranda, or other
10           internal government documents made by the
             attorney for the government or any other
11           government agent investigating or prosecuting
             the case.  Nor does the rule authorize the
12           discovery or inspection of statements made by
             government witnesses or prospective
13           government witnesses except as provided in 18
             U.S.C. § 3500.
14
   Section 3500(a) provides:
15
             In any criminal prosecution brought by the
16           United States, no statement or report in the
             possession of the United States which was
17           made by a Government witness (other than the
             defendant) shall be the subject of subpoena,
18           discovery, or inspection until said witness
             has testified on direct examination in the
19           trial of the case.

20 This court lacks the authority to order pretrial discovery of

21 Jencks Act material over the government's objection.  *United*

22 *States v. Mills*, 641 F.2d 785,790 (9th Cir.), *cert. denied*, 454

23 U.S. 902 (1981).  Furthermore, as held in *United States v. Jones*,

24 612 F.2d 453, 455 (9th Cir. 1979), *cert. denied*, 445 U.S. 966

25 (1980):

26           Brady does not overcome the strictures of the

                                 18

> Jencks Act.  When the defense seeks evidence
> which qualifies as both Jencks Act and <u>Brady</u>
> material, the Jencks Act standards control.

Finally, the Supreme Court has held that "[t]here is no general

constitutional right to discovery in a criminal case, and <u>Brady</u>

did not create one ...."  *Weatherford v. Bursey*, 429 U.S. 545,

559 (1977).

Petitioner claims ineffective assistance of counsel because

counsel informed Petitioner that "'because Manuel <u>conspired</u> with

the confidential informant' the agreement requisite to conspiracy

did exist."  Petitioner asserts:

> Counsel information that Manuel had <u>conspired</u>
> with the informant was fatal to the plea of
> guilty obtention [sic], Manuel as matter of
> law wouldn't conspired with an [sic]
> 'government agent or informant.'  Counsel at
> no moment nor the court itself had informed
> the movant's [sic] that the conspiracy had to
> be proved between 'Manuel, Dalia and perhaps
> the petitioner,' had the petitioner's know
> [sic] that that [sic] the conspiracy would
> not as a matter of law to be proved between
> Manuel and the informant, with fair reason
> this movant's would have asserted his trial
> right and reject the government's and counsel
> [sic] plead of guilty.

Petitioner's contention is belied by the factual basis for

Petitioner's guilty plea in the written Plea Agreement and in the

Rule 11 colloquy in which Petitioner admitted under oath to those

facts.  The factual basis of Petitioner's guilty plea clearly

describes Petitioner's co-conspirators as Manuel Quintero and

Dalia Roman.  Manuel Quintero, who pleaded guilty on the same day

as Petitioner, pleaded guilty to the following facts in his

written Plea Agreement and during his Rule 11 colloquy:

19

1
      Between approximately September 18, 2002 and
2
      September 30, 2002, in Fresno County, State
      and Eastern District of California, defendant
3
      Manuel Quintero was a member of a conspiracy
      to distribute, cocaine base/crack.  As part
4
      of this conspiracy, on or about September 30,
      2002, defendant Manuel Quintero approximately
5
      three kilograms of cocaine base/crack which
      he intended to sell to another person.  On or
6
      about September 30, 2002, defendant Manuel
      Quintero engaged in several telephone
7
      conversations with his girlfriend Dalia
      Roman.  Those telephone conversations
8
      concerned arrangements for Dalia Roman and
      Ruben Quintero (Manuel Quintero's brother) to
9
      watch out for law enforcement while Manuel
      Quintero sold cocaine base/crack to someone.
10
      On September 30, 2002, Dalia Roman and Ruben
      Quintero traveled to the apartment complex at
11
      3207 West Shields Avenue, Fresno, California
      in order to to [sic] watch out for law
12
      enforcement while Manuel Quintero negotiated
      the sale of cocaine base/crack.  At all
13
      relevant times, defendant Manuel Quintero and
      his co-conspirators knew that cocaine
      base/crack was a controlled substance.
14

Dalia Roman, who also pleaded guilty on the same day as her co-

15
defendants, pleaded guilty to the following facts in her written

16
Plea Agreement and during her Rule 11 colloquy:

17
      Between approximately September 18, 2002 and
18
      September 30, 2002, in Fresno County, State
      and Eastern District of California, defendant
19
      Dalia Roman was a member of a conspiracy to
      distribute, and possess with intent to
20
      distribute, cocaine base/crack.  On or about
      September 30, 2002, defendant Dalia Roman
21
      engaged in several telephone conversations
      with her boyfriend Manuel Quintero.  Those
22
      telephone conversations concerned
      arrangements for Dalia Roman and Ruben
23
      Quintero (Manuel Quintero's brother) to watch
      out for law enforcement while Manuel Quintero
24
      sold cocaine base/crack to someone.  On
      September 30, 2002, Dalia Roman and Ruben
25
      Quintero traveled to the apartment complex at
      3207 West Shields Avenue, Fresno, California
26
      to to [sic] watch out for law enforcement

> while Manuel Quintero negotiated the sale of
> cocaine base/crack.  At all relevant times,
> defendant Dalia Roman and her co-conspirators
> knew that cocaine base/crack was a controlled
> substance.

These statements, all made under oath during the Rule 11 colloquies negate any claim of ineffective assistance of counsel based on counsel's alleged statement to Petitioner that Manuel Quintero had conspired with the confidential informant and counsel was ineffective in failing to investigate Petitioner's involvement in the conspiracy.

Petitioner contends that counsel was ineffective by failing to discover or contend that "Agent's Cambel [sic] created false evidence that on or about August 25, 1999, Fresno Police Detective Epifanio Cardenas working in an undercover capacity purchased one ounce of cocaine from Manuel Quintero."

Petitioner's assertion is based on Manuel Quintero's declaration filed in support of Petitioner's Section 2255 motion. Even if Manual Quintero's averment is correct, evidence or lack thereof of Manuel Quintero's past drug trafficking had no relevance to Petitioner's guilt or innocence in the criminal prosecution.  Petitioner has not demonstrated prejudice as a result of defense counsel's alleged failure to investigate Manuel Quintero's claim.

Petitioner claims that counsel was ineffective because "[c]ounsel informed his client that if guilty of conspiracy from trial jurors automatically also should be guilty of possession was crucial to the plea of guilty obtention [sic]."

21

Specifically, Petitioner claims that counsel did not advise him of the law in *Pinkerton v. United States*, 328 U.S. 640 (1946).

In *Pinkerton*, the Supreme Court held that a party to an unlawful conspiracy may be liable for the substantive offense committed by a co-conspirator in furtherance of the conspiracy. A defendant may be convicted under a *Pinkerton* theory for a charged violation if the government proves: (1) the substantive offense was committed in furtherance of the conspiracy; (2) the offense fell within the scope of the conspiracy; or (3) the offense could reasonably have been foreseen as a necessary of natural consequence of the conspiracy. *See United States v. Fonseca-Caro,* 114 F.3d 906, 908 (9th Cir.1997); *United States v. Lopez*, 100 F.3d 98, 101 (9th Cir.1996).

Relying on *Pinkerton*, Petitioner asserts: "[C]ontrary [sic] what counsel had explained and informed regarding the law under Pinkerton to be deemed guilty of the substantive counts of possession committed by Manuel, the jury had to be instructed under Pinkerton and that proof of a conspiracy <u>alone</u> would not sustain the possession charge."

Petitioner has not demonstrated ineffective assistance of counsel based on this claim because he has not demonstrated prejudice.  Petitioner admitted the substantive offense to which he pleaded guilty.  Whether or not *Pinkerton* conspiracy instructions would have been appropriate if Petitioner and his co-defendants had gone to trial is speculative.  There is no present showing what evidence would have been presented at trial.

Moreover, a *Pinkerton* instruction is pro-prosecution as it emphasizes the vicarious liability of conspiracy.

Petitioner contends that counsel was ineffective for allegedly failing to inform Petitioner of the use of a "deliberate ignorance" instruction.  Petitioner asserts:

> Counsel had been explained [sic] that because the petitioner's may be had 'close the eyes' when the offense was committed, it was sufficient to sustain a conviction, but counsel did not informed [sic] that regarding such facts the movant's [sic] was still entitled to deliberate ignorance instruction because petitioner's [sic] denied actual knowledge that the red cooler was improperly containing dope, the movant's [sic] did not know the essential facts that constituted crime nor had the knew [sic] his conduct for driving a car in order to get Dalia's appearance to the scene of the crime was in violation of the law, the case as presented from the prosecution solely would present evidence that the petitioner's [sic] 'perhaps deliberately avoided knowledge' and perhaps the petitioner's purposely contrived to avoid learning the truth.  The trial record would support that petitioner's [sic] was aware of a high probability that his understanding of the crime was erroneous and consciously avoided obtaining actual knowledge of his actions.

Petitioner's claim of ineffective assistance of counsel is without merit.  "Deliberate ignorance" is not a defense to the crime; rather, it is a theory of culpability presented by the prosecution.  *See United States v. Shannon*, 137 F.3d 1112, 1117-1118 (9th Cir.)*, cert. denied*, 524 U.S. 962 (1998), *overruled on other grounds*, *United States v. Heredia*, 483 F.3d 913 (9th Cir.), *cert. denied*, 128 S.Ct. 804 (2007):

> Where the defendant's knowledge is at issue,

> a 'deliberate ignorance' or 'Jewell'
> instruction may be given where it is
> warranted by the evidence presented at trial
> ... If the parties present evidence of actual
> knowledge as well as deliberate ignorance, a
> Jewell instruction is appropriate ... Before
> a defendant can be deemed to be deliberately
> or willfully ignorant, facts must have put
> her on notice of the probability of the
> occurrence of criminal activity, that the
> defendant failed to investigate, thus
> deliberately choosing to not verify or
> discover the criminal activity ... However, a
> district court cannot give a Jewell
> instruction when the evidence points only to
> the defendant either having knowledge or not
> having knowledge.

Petitioner contends counsel was ineffective because counsel failed to advise Petitioner before pleading guilty "that he might be sentenced without Guidelines consideration and because of the movant's [sic] would have been sent to boot camp or obtain probation for the offense due to the fact that maximum allowed was four years."  Petitioner asserts that "[a] competent lawyer would have warned petitioner of the significant risk that the guideline would have to the sentence, the advised of lawyer have caused to reject the trial assertion, petitioner's [sic] was not sent to boot camp nor sentenced to probation due to his immigration status."

Petitioner's claim is belied by the terms of the written Plea Agreement and the Rule 11 colloquy.  Petitioner stated under oath that he had read the Plea Agreement and discussed it with counsel before signing it.  The Plea Agreement specifically details the process to be followed in determining Petitioner's sentence and specifically states that the crime to which

Petitioner was pleading guilty provided a maximum of four years imprisonment, which was the sentence eventually imposed.  As noted, the Court discussed each of these provisions in the Plea Agreement with Petitioner during the Rule 11 colloquy and Petitioner stated under oath that he understood them.  Defense counsel's inaccurate prediction of the type of sentence eventually imposed is not ineffective assistance of counsel under these circumstances.  *See Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir.1990), *cert. denied*, 499 U.S. 940 (1991); *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir.1993), *cert. denied*, 510 U.S. 1184 (1994).  Petitioner was fully warned that his sentence could be different from the sentence counsel recommended and that the judge was not bound by the terms of the Plea Agreement.

Petitioner claims counsel was ineffective because "Petitioner's [sic] was misinformed from counsel regarding the voir dire selection-random, had the movant's [sic] knew that the government would not select jurors or be allowed to use peremptory strikes to exclude (1) African-American or (2) Hispanic-American from jurors selection based on race alone, the movant's would have asserted his trial, [sic] at no moment the movant had knowledge that him [sic] would be permitted to have in the jury selection hispanic or african americans [sic] race."

Petitioner's claim is categorically without merit.  The written Plea Agreement specifically provided:

                    If the trial were a jury trial, the jury

25

would be composed of twelve lay persons
selected at random.  The defendant and his
attorney would have a say in who the jurors
would be by removing prospective jurors for
cause where actual bias or other
disqualification is shown, or without cause
by exercising peremptory challenges.

Petitioner stated under oath that he had read the Plea Agreement
and discussed it with counsel before signing it and that he
understood these rights and was willing to give them up during
the Rule 11 colloquy.  Petitioner's contention that he would have
gone to trial if he had known that counsel could object to the
prosecutor's use of peremptory challenges based on race under
*Batson v. Kentucky*, 476 U.S. 79 (1986), is simply not credible,
especially since a *Batson* issue is not based on any facts as jury
selection was never conducted.

Petitioner claims counsel was ineffective because he failed
to advise Petitioner that he could have subpoenaed Manuel
Quintero and Dalia Roman as witnesses at trial.  Petitioner
presents no evidence that either Manuel Quintero or Dalia Roman
told Petitioner at the time of his guilty plea that either would
have testified on his behalf.  Further, given their admissions
under oath during their respective changes of plea, made the same
day as Petitioner's change of plea, both would have been subject
to impeachment if they testified contrary to their sworn
representations to the Court and would face the possibility that
their Plea Agreements would be vacated by the prosecution.
Petitioner has not demonstrated prejudice under the *Strickland*
standard.

1     Petitioner's motion on these grounds is DENIED.

2          4.   **Ineffective Assistance of Counsel at Sentencing**.

3               a.   **Failure to Argue for Downward Departure Based**

4    **on Sentencing Entrapment**.

5     Petitioner contends that he was denied the effective

6    assistance of counsel at sentencing because of his failure to

7    argue for a downward departure based on sentencing entrapment or

8    sentencing manipulation.

9     Petitioner makes no showing that he was subjected to

10   sentencing entrapment under the Ninth Circuit standards set forth

11   above.  Consequently, counsel was not ineffective in failing to

12   argue for a downward departure based on sentencing entrapment.

13    Petitioner's motion on this ground is DENIED.

14              b.   **Forseeability of Amount of Cocaine**.

15    Petitioner argues he was denied the effective assistance of

16   counsel at sentencing because of counsel's failure to argue that

17   Petitioner did not foresee the 2 kilograms of cocaine involved in

18   the crime.

19    Petitioner admitted in the written Plea Agreement and under

20   oath during the Rule 11 colloquy to the amount of cocaine

21   involved in the crime to which he pleaded guilty.  Because of

22   Petitioner's admission, counsel could not argue at sentencing

23   that Petitioner did not "foresee" the amount of cocaine involved.

24   Further, because Petitioner was sentenced to well below the range

25   to which he was originally exposed, he has not demonstrated

26   prejudice within the meaning of *Strickland*.

1    Petitioner's motion on this ground is DENIED.

2          c.   **Failure to Call Co-Defendants and Petitioner's**
3    **Mother and Sister to Testify to Minimal Role**.

4    Petitioner contends he was denied the effective assistance
5    of counsel because of counsel's failure at sentencing to call co-
6    defendants Manuel Quintero and Dalia Roman and Petitioner's
7    mother and sister to testify to Petitioner's minimal role in the
8    offense.

9    Petitioner has not demonstrated ineffective assistance of
10   counsel on this ground because Petitioner cannot demonstrate
11   prejudice.  The PSR recommended a two-level reduction to
12   Petitioner's Base Offense Level for his minor role in the
13   offense, a reduction accepted by the Court when sentencing
14   Petitioner.

15   Petitioner's motion on this ground is DENIED.

16          d.   **Failure to Object to Term of Supervised**
17   **Release**.

18   Petitioner contends that counsel was ineffective at
19   sentencing for failing to argue that the imposition of a term of
20   supervised release following Petitioner's release from
21   imprisonment violates *Apprendi v. New Jersey*, 530 U.S. 466
22   (2000).

23   Petitioner's claim is without merit.  *See United States v.*
24   *Huerta-Pimental,* 445 F.3d 1220, 1222-122 (9th Cir.), *cert.*
25   *denied,* 549 U.S. 1014 (2006).

26   Petitioner's motion on this ground is DENIED.

     **5.** **Ineffective Assistance of Counsel in Advising Petitioner to Plead Guilty.**

     Petitioner contends that counsel was ineffective in advising Petitioner to plead guilty as a result of "(a) coercion, (b) 'unlawful out-of-court package deal based in [sic] his codefendant's Manuel Quintero cooperation/agreement, (c) out-of-court counsels and drug enforcement agents 'secretive' package deal agreement."

     Petitioner's claims of coercion to plead guilty and a secretive package deal agreement are belied by the terms of the written Plea Agreement and Petitioner's admissions under oath during the Rule 11 colloquy.  During the change of plea proceedings, the Court reviewed every provision of the Plea Agreement with Petitioner and asked Petitioner if he agreed.  In every instance, Petitioner stated that he did.  Petitioner was advised in the Plea Agreement and the Rule 11 colloquy that his sentence would be determined by the Court upon recommendation of the Probation Office, that the Court was not a party to the Plea Agreement, and that, if the sentence pronounced was different from what Petitioner expected, Petitioner would not be allowed to withdraw his guilty plea.  Petitioner stated under oath that he understood and agreed.  After reviewing with Petitioner every provision of the Plea Agreement pertaining to agreements by Petitioner and agreements by Respondent, the following occurred:

          Q.  I have gone through what I understand in this writing to be the entire agreement as to what you are supposed to give and get in

1    return.  Do you have any different
     understanding?  Has anybody promised you
2    anything that I have not just gone over?

3    A. No.

4    Q.  Has anybody threatened you or put
     pressure on you to get you to change your
5    plea?

6    A.  No.

7    Petitioner's motion on this ground is DENIED.

8         6.  **Failure to Afford an Alford Plea or To Call for**

9    **Pretrial Hearing Before Entry of Guilty Plea**.

10        Petitioner contends counsel was ineffective "to minimum

11   afford a **Alford** Plea."  Petitioner asserts that "Counsel would

12   have called both codefendants' for the proposition of an Alford

13   plea, based on his client innocence purposes."

14        In *North Carolina v. Alford*, 400 U.S. 25 (1970), the Supreme

15   Court held "an express admission of guilt ... is not a

16   constitutional requisite to the imposition of criminal penalty.

17   An individual accused of crime may voluntarily, knowingly, and

18   understandingly consent to the imposition of a prison sentence

19   even if he is unwilling or unable to admit his participation in

20   the acts constituting the crime."  400 U.S. at 37.  The Supreme

21   Court noted:

22             Because of the importance of protecting the
               innocent and of insuring that guilty pleas
23             are the product of free and intelligent
               choice, various state and federal court
24             decisions properly caution that pleas coupled
               with claims of innocence should not be
25             accepted unless there is a factual basis for
               the plea ... and until the judge taking the
26             plea has inquired into and sought to resolve

                                    30

1     **the conflict between the waiver of trial and
2     the claim of innocence ... In the federal
      courts, Fed. Rule Crim. Proc. 11 expressly
3     provides that a court 'shall not enter a
      judgment upon a plea of guilty unless it is
      satisfied that there is a factual basis for
4     the plea.**

5 *Id.* at 38 n.10.

6   **Petitioner has not demonstrated prejudice as required by**

7 *Strickland* **because he makes no showing that an** *Alford* **plea would**

8 **have been acceptable to the United States and to the Court.** *See*

9 *Clark v. Lewis***, 1 F.3d 814, 823 (9th Cir.1993).  The written Plea**

10 **Agreement and the Rule 11 colloquy do not indicate in any way**

11 **that Petitioner was pleading guilty even though he was**

12 **maintaining his innocence of the crime to which he pleaded**

13 **guilty.  There was a factual basis for Petitioner's guilty plea.**

14   **Petitioner's motion on this ground is DENIED.**

15     **7.  <u>Failure to Dispute *Terry* Investigative Stop</u>.**

16   **Petitioner contends counsel was ineffective by failing to**

17 **move to suppress the results of a** *Terry* **stop.**

18   **Petitioner's claim is without merit.  First, there was no**

19 *Terry* **stop.  The Fourth Amendment prohibition of unreasonable**

20 **searches and seizures by the Government extends to brief**

21 **investigatory stops of persons or vehicles that fall short of**

22 **traditional arrest.** *Terry v. Ohio***, 392 U.S. 1, 9 (1968).  The**

23 **PSR states that Petitioner was** *arrested* **driving away from the**

24 **scene of the drug transaction after he was seen by the**

25 **confidential informant delivering the cocaine to Manuel**

26 **Quintero's apartment.  There is no question that the arresting**

officers had probable cause to arrest Petitioner based on this information.

Petitioner's motion on this ground is DENIED.

8.  <u>Entrapment by Estoppel</u>.

Petitioner contends that counsel was ineffective "in contending not with this affirmative defense of entrapment by estoppel for trial purposes or by guilty plea intentions." Petitioner asserts:

> At the time of the guilty plea there was an agreement between codefendant's [sic] Manuel Quintero and the respondent for cooperation, if Manuel Quintero was an [sic] 'government cooperating witness' at the time of the plea-guilty, Manuel Quintero would have not recommended the guilty plea entering to the petitioner's as part of his own affairs.

Petitioner's contention is without merit.  Entrapment by estoppel has no application or relevance to Petitioner's guilty plea.  "The entrapment by estoppel defense applies when an authorized government official tells the defendant that certain conduct is legal and the defendant believes the official ... '[T]he defendant must show [1] that he relied on the false information and [2] that his reliance was reasonable.' ... A defendant's reliance is reasonable if '"a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries."'" *United States v. Brebner*, 951 F.2d 1017, 1024 (9th Cir.1991).

Petitioner's motion on this ground is DENIED.

32

1                          **CONCLUSION**

2       For the reasons stated:

3       1.   Petitioner Ruben Quintero's motion to vacate, set aside

4   or correct sentence pursuant to 28 U.S.C. § 2255 is DENIED;

5       2.   The Clerk of the Court is directed to ENTER JUDGMENT FOR

6   RESPONDENT.

7           IT IS SO ORDERED.

8   **Dated:** ___**December 22, 2008**___     _____**/s/ Oliver W. Wanger**_____
                                             UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26